

U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D Street, NW*
*Washington, D.C. 20530*

March 6, 2024

Mark J. Langer, Clerk
United States Court of Appeals
for the District of Columbia Circuit
333 Constitution Avenue, N.W., Room 5423
Washington, D.C. 20001-2866

    Re:   *United States v. Couy Griffin*, No. 22-3042
           Oral argument held December 4, 2023, before Judges Pillard, Katsas, and Rogers

Dear Mr. Langer:

Pursuant to Federal Rule of Appellate Procedure 28(j), the government submits the attached transcript of an oral ruling made by the Honorable Tanya S. Chutkan on March 5, 2024, in *United States v. Nester*, No. 22-183, which is relevant to the argument made at pages 40 to 50 of the government's brief.

In her ruling, Judge Chutkan concluded that the "knowingly" *mens rea* in 18 U.S.C. § 1752(a)(1) does not require knowledge of a Secret Service protectee's presence within the restricted area because (1) a protectee's presence and other elements set forth in § 1752(c)(1)(A)-(C) are "exclusively jurisdictional requirements" (3/5/24 Transcript (Tr.) 5), and, even if not, (2) Congress did not intend such knowledge to be required (*id.* at 9-10).

In reaching that result, Judge Chutkan "concur[red] with [the] findings and reasoning" (3/5/24 Tr. 6) of *United States v. Carnell*, No. 23-

139 (BAH), 2024 WL 639842 (D.D.C. Feb. 15, 2024). Judge Chutkan also agreed with the conclusion in *United States v. Groseclose*, No. 21-cr-311 (CRC), 2024 WL 68248, at *7 (D.D.C. Jan. 5, 2024), that, when Congress originally enacted § 1752, "the requirement that a Secret Service protectee be on the premises would appear to be 'jurisdictional only[.]'" (see 3/5/24 Tr. 7). Judge Chutkan, however, disagreed with the conclusion in *Groseclose* "that the 2006 amendments to Section 1752 converted the jurisdictional requirements of the statute's earlier version into substantive requirements" (3/5/24 Tr. 8). Applying *Feola v. United States*, 420 U.S. 671 (1975), Judge Chutkan reasoned, like Judge Howell in *Carnell*, that "*Feola* did not consider the statutory penalty structure when determining that Section 111's federal officer element was jurisdictional" (*id.*). Judge Chutkan determined "that the increased penalties" were not "indicative of congressional intent" to reconceptualize the statute (*id.* at 8-9).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
Assistant United States Attorneys

_____/s/_____
DANIEL J. LENERZ
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530

cc: Lisa B. Wright, Esq.
    Assistant Federal Public Defender
    625 Indiana Avenue NW, Suite 550
    Washington, D.C. 20004

# ATTACHMENT

```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
     UNITED STATES OF AMERICA,
 3                                          Criminal Case
                      Plaintiff(s),         No. 22-183-2 TSC
 4          v.
                                            Washington, D.C.
 5   LYNNWOOD NESTER,
                                            March 5, 2024
 6                    Defendant(s).

 7   -----------------------------------------------------------

 8                       EXCERPT OF JURY TRIAL
                  BEFORE THE HONORABLE TANYA S. CHUTKAN
 9                   UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   FOR THE PLAINTIFF(S):    Brian Morgan, Esquire
                              Katherine E. Boyles, Esquire
12                            United States Attorney's Office
                              District of Columbia
13                            601 D Street Northwest
                              Washington, DC 20004
14

15
     FOR THE DEFENDANT(S):    Jonathan W. Crisp, Esquire
16                            Crisp and Associates, LLC
                              4031 North Front Street
17                            Harrisburg, Pennsylvania 17110

18

19

20   REPORTED BY:             Tammy Nestor, RMR, CRR
                              Official Court Reporter
21                            333 Constitution Avenue Northwest
                              Washington, D.C. 20001
22                            tammy_nestor@dcd.uscourts.gov

23

24

25
```

1  The following proceedings began at 9:43 a.m.:
2      THE COURTROOM DEPUTY:  Your Honor, we are on the
3  record for Criminal Case 22-183.  This is defendant 2.
4  United States of America versus Lynnwood Nester.  Counsel,
5  please approach and identify yourselves for the record.
6      MR. MORGAN:  Good morning, Your Honor.  I'm Brian
7  Morgan for the United States.  I'm joined at counsel table
8  by Katherine Boyles, AUSA; Ms. Takia Jones, paralegal; and
9  it Special Agent Melissa Bridges.
10     THE COURT:  Good morning.
11     MR. CRISP:  Good morning, Your Honor.  Jonathan
12 Crisp on behalf of Lynnwood Nester.
13     THE COURT:  Good morning.  And do you want to
14 announce who else is at counsel table, Mr. Crisp?
15     MR. CRISP:  Yes, Your Honor.  I apologize, Your
16 Honor.  Also at counsel table with me is, aside from my
17 client, is Sarah LaMaster, who is a paralegal in my
18 office.
19     THE COURT:  Good morning.
20     Good morning, Mr. Nester.
21     Okay.  Before we get the jury in, just give me one
22 second.
23     So before we begin the government's case, we need
24 to resolve Mr. Nester's motion concerning jury
25 instructions for Counts 1 and 2.  Those counts charge

| | |
|---|---|
| 1 | Mr. Nester with violating 18 U.S.C., Section 1752(a)(1) |
| 2 | and 1752(a)(2). The parties submitted briefing regarding |
| 3 | these instructions last week at ECF Nos. 117 and 118. |
| 4 | Now, Section 1752(a)(1) prohibits knowingly |
| 5 | entering or remaining in any restricted building or |
| 6 | grounds without lawful authority to do so. And Section |
| 7 | 1752(a)(2) bars knowingly engaging in disorderly or |
| 8 | disruptive conduct in any restricted building or grounds. |
| 9 | The statute defines restricted building or grounds |
| 10 | to mean any posted, cordoned off, or otherwise restricted |
| 11 | building or grounds where the president or other person |
| 12 | protected by the Secret Service is or will be temporarily |
| 13 | visiting. That's 18 U.S.C., Section 1752(c)(1)(B). |
| 14 | It further defines the term other person protected |
| 15 | by the Secret Service to mean any person whom the United |
| 16 | States Secret Service is authorized to protect under |
| 17 | Section 3056 of this title or by presidential memorandum |
| 18 | when such person has not declined such protection. And |
| 19 | that's Subsection 1752(c)(2). |
| 20 | As a general rule, jury instructions are not |
| 21 | considered erroneous if, when viewed as a whole, they |
| 22 | fairly represent the applicable legal principles and |
| 23 | standards. That's from United States versus Brown, 954 |
| 24 | F.3d 794 at 801. |
| 25 | So my instructions have to accurately state the |

1  elements of the alleged crimes and the appropriate legal
2  standard to be applied, and that's why we are here this
3  morning before trial begins.
4      Mr. Nester seeks a jury instruction that Section
5  1752 requires proof that Mr. Nester knew both that he was
6  in an area that was posted and cordoned off or otherwise
7  restricted and that he knew that the president or other
8  person protected by the Secret Service was or would be
9  temporarily visiting -- that he knew that the president or
10 some other person protected by the Secret Service would be
11 temporarily visiting the Capitol.
12     The government has asked me to reject that
13 construction and hold that 1752's text, structure, and
14 purpose support the conclusion that Congress intended to
15 require a defendant to know he was entering or remaining
16 in a posted, cordoned off, or otherwise restricted area
17 but not that he also knew why the area was restricted.
18     I am going to deny Mr. Nester's motion and issue a
19 charging instruction that reflects the government's
20 position regarding the elements of Count 1 and 2.
21     I previously addressed this issue in United States
22 versus Vo, which is 21-CR-509.  Like Mr. Nester, Mr. Vo
23 asked for an instruction that the government must prove
24 both that the defendant knew he was in a posted, cordoned
25 off, or otherwise restricted area, and also that he knew

it was an area of a building or grounds where a person protected by the Secret Service was or would be temporarily visiting.

I denied that motion and held that while the government was required to prove that the vice president was protected by Secret Service and would be visiting the Capitol, the government was not required to prove that the defendant knew the vice president was going to be visiting because no such element appears in the text of the statute.

Since that ruling, a significant split has developed among the judges in this district. However, I continue to believe -- and I'm sure the Court of Appeals will set us all on the right path eventually as they have been doing. However, I continue to believe that the mens rea requirement does not apply to Subsection (c)(1)(A) through C1C because those elements including the presence of a Secret Service protectee are exclusively jurisdictional requirements.

Congress normally does not intend to extend scienter, however that's pronounced, to an offense's jurisdictional elements. And I cite in support of that notion Rehaif, R-E-H-A-I-F, versus United States, 139 Supreme Court Reporter 2191 at 2195 to 96.

As Judge Howell explained in her recent and

1 well-reasoned opinion in United States versus Carnell,
2 No. 23-CR-139 at ECF No. 98, whether the statutes
3 "knowingly" requirement modifies the statute's
4 jurisdictional language is a matter of congressional
5 intent informed by the statute's text, structure, and
6 purpose.
7 Because Judge Howell has thoroughly surveyed the
8 law on this issue and I concur with her findings and
9 reasoning, I will explain only where I diverge from her
10 reasoning.
11 Beginning with the text, I will say that I agree
12 with Judge Cooper's opinion in United States versus
13 Groseclose, 21-CR-311 at ECF No. 99 that a purely textual
14 reading lends support to Mr. Nester's interpretation that
15 knowingly extends across both Subsections (c)(1) and
16 (c)(1)(A) through (c)(1)(C) which further define
17 restricted area.
18 But the statute's text is only one indicator of
19 Congress's intent.  I am ultimately persuaded that a
20 purely textual reading would undermine Congress's stated
21 purpose to federalize ordinary state law offenses in order
22 to achieve more certainty and uniformity over security
23 measures involving important federal officers and to
24 provide the fullest protection possible for Secret Service
25 protectees.

1          Mr. Nester's reading would, thus, violate the
2    longstanding rule that a statute should not be construed
3    to produce an absurd result.
4          Judge Cooper and I agree that focusing only on
5    Section 1752 as it stood when first enacted as part of the
6    Omnibus Crime Control Act of 1970, there is no meaningful
7    daylight between this case and United States versus Feola,
8    F-E-O-L-A, 420 U.S. 671.
9          In Feola, the Supreme Court held that a defendant
10   charged under 18 U.S.C., Section 111 need not know that
11   the person he assaulted was a federal officer because that
12   element was jurisdictional only given that the statute
13   largely duplicated state law criminal provisions and was
14   aimed at ensuring a federal forum in which to prosecute
15   those who harmed federal officers.
16         Similarly, in passing the original version of
17   Section 1752, Congress explained that almost everything
18   proscribed is presently outlawed in some form or other at
19   the state or local level and that the new law was designed
20   to provide a uniform minimum of federal jurisdiction for
21   presidential security when the president is on temporary
22   visits.  And that was in the Senate reports 91-1252 at 7.
23         To achieve its goals, Congress introduced
24   jurisdictional elements to make Section 1752's prohibited
25   activities federal offenses so that the Secret Service had

authority to prevent those activities.

Judge Cooper and I diverge because I cannot agree that the 2006 amendments to Section 1752 converted the jurisdictional requirements of the statute's earlier version into substantive requirements. The conference report accompanying those amendments refers to expanding Section 1752, not limiting it by rewriting its jurisdictional provisions into substantive elements subject to a mens rea requirement.

Judge Cooper believes that when Congress redrafted the statute to double the maximum penalty from six months to one year, it reconceptualized Section 1752 and created a different sort of federal crime. And I'm quoting from Groseclose at 18.

However, I agree with the government and with Judge Howell that Feola instructs that the increased penalties are not indicative of congressional intent. As Judge Howell explained, Feola did not consider the statutory penalty structure when determining that Section 111's federal officer element was jurisdictional.

To the contrary, Feola's holding was critiqued in dissent for that reason.

Moreover, when Congress amended the statute to move the jurisdictional requirements to new subsection (c)(1), it did so to correct and simplify the drafting of Section

1 | 1752.

2 | I refer now to Federal Restricted Buildings and
3 | Grounds Improvement Act of 2011, which is at Public Law
4 | 112-98.

5 | The House judiciary committee report accompanying
6 | that act stated the act provides increased protection to
7 | the President of the United States, the first family, the
8 | Vice President of the United States, and other Secret
9 | Service protectees.

10 | There is nothing in the committee report indicating
11 | that Congress sought a wholesale change to the statute
12 | rather than its stated objective of amplifying the
13 | drafting of Section 1752. To the contrary, it again
14 | sought to increase protections for protectees.

15 | For all of these reasons, I find that requiring
16 | proof of knowledge of the reason for the restricted area
17 | would run counter to Congress's purpose in enacting a
18 | statute designed to safeguard the president and other
19 | Secret Service protectees.

20 | And I am citing here United States versus Griffin,
21 | 549 F.Supp 3rd 49 at 57.

22 | Because Mr. Nester's preferred construction would
23 | lead to the illogical result that a statute designed to
24 | enhance protections for protectees would, instead,
25 | undermine their security by requiring some amount of

```
 1    publication of protectees' identities, movements, and
 2    whereabouts, I do not believe that Congress intended that
 3    outcome.
 4            I note that this issue is currently raised before
 5    the circuit in United States versus Griffin.
 6            In the alternative and in the event the protectee
 7    requirement is not found to be jurisdictional, I
 8    nonetheless hold that Section 1752 does not require a
 9    defendant to know why an area is restricted.  Whether a
10    criminal statute requires the government to prove that the
11    defendant acted knowingly is a question of congressional
12    intent.
13            For the reasons stated above, I cite to that
14    proposition, Rehaif, R-E-H-A-I-F, 139 Supreme Court
15    Reporter at 2195.
16            For the reasons I stated previously, Congress made
17    its intent to provide the fullest protection possible for
18    Secret Service protectees clear.
19            Because I believe Mr. Nester's reading runs
20    contrary to the contextual and historical indicia of
21    Congress's intent, I deny the defense's motion for an
22    instruction that Section 1752 requires proof that he knew
23    both that he was in an area that was posted, cordoned off,
24    or otherwise restricted and that he also knew that the
25    president or other person protected by the Secret Service
```

was or would be temporarily visiting the Capitol.

    This is all -- the Court of Appeals is very busy, as are we, clarifying an area of law and a series of statutes that obviously have not previously been the subject of much litigation. It's one of these areas in which, I guess, if I'm wrong, we will find out soon enough.

    All right. Are we ready for the jury?

    THE COURTROOM DEPUTY: Yes, Your Honor.

    - - -

# C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

3/5/24                s/ Tammy Nestor
                      Tammy Nestor, RMR, CRR
                      Official Court Reporter
                      333 Constitution Avenue NW
                      Washington, D.C. 20001
                      tammy_nestor@dcd.uscourts.gov